UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA STATE EMPLOYEES ASSOCIATION,<br><br>                Plaintiff,<br><br>    v.<br><br>RICHARD BOGART; and DOES 1 through 25, inclusive,<br><br>                Defendants. | Case No. 2:14-CV-02494 JAM-KJN<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS** |
| RICHARD BOGART,<br><br>                Counter-Plaintiff,<br><br>    v.<br><br>CALIFORNIA STATE EMPLOYEES ASSOCIATION,<br><br>                Counter-Defendant. | |

Plaintiff California State Employees Association ("CSEA") moves to dismiss (Doc. #9) the second and third causes of action in Defendant Richard Bogart's ("Bogart") First Amended Cross-Complaint ("FACC") (Doc. #8).  Bogart opposes the motion (Doc. #12) and CSEA filed a reply (Doc. #14).  For the following reasons, CSEA's motion is GRANTED.[1]

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for January 14, 2015.

1

## I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

According to Bogart's FACC, "for a number of years," Richard Bogart "worked as an insurance broker for Anthem Life Insurance Company." FACC ¶ 3. During his time with Anthem, Bogart "developed a long-standing mutually beneficial relationship with CSEA," which is a federation of four affiliated organizations of California state employees. FACC ¶ 3. In 2007, a member of CSEA's leadership "asked Mr. Bogart if he could research, identify and analyze two possible vendors who would be able to assist CSEA in offering CSEA members a discount electronics purchasing program . . . as a non-insurance benefit of membership." FACC ¶ 4. Bogart brokered an agreement between CSEA and Purchasing Power, a company specializing in establishing and managing purchasing programs for employees through which payments for certain, offered products are automatically deducted from employee paychecks through payroll. FACC ¶ 4. On December 8, 2007, Bogart "entered a Marketing Agreement with Purchasing Power under which Mr. Bogart was to receive a four percent commission on all CSEA member purchases from Purchasing Power." FACC ¶ 5.

From 2007 through early 2014, Bogart received commissions pursuant to the Marketing Agreement. FACC ¶ 6. However, after a leadership change at CSEA, the new director of member benefits wrote a letter to Purchasing Power, informing it that CSEA "does not have or utilize[] an independent contractor or broker for its business" and that "CSEA did not sign an independent contract or broker agreement with Mr. Bogart." FACC ¶¶ 7-8. As a result of this letter, "Purchasing Power terminated its contract with Mr. Bogart and stopped paying him commissions in April 2014." FACC

¶ 9.  Beginning in April 2014, Purchasing Power began paying the four percent commission directly to CSEA.  FACC ¶ 9.

On August 21, 2014, CSEA filed a complaint in Sacramento County Superior Court, alleging against Bogart seven causes of action, including conversion, deceit/fraudulent concealment, and constructive fraud.  On October 22, 2014, Bogart filed a counterclaim (mistakenly labeled as a cross-claim) against CSEA.  Shortly thereafter, Bogart removed the case to this Court, on the basis of diversity jurisdiction.  On November 25, 2014, Bogart filed his FACC against CSEA.  The FACC includes the following causes of action: (1) intentional interference with contractual relations; (2) conversion; and (3) violation of Business and Professions Code § 17200, commonly known as the Unfair Competition Law ("UCL").

## II.  OPINION

### A.  Conversion

CSEA argues that Bogart has failed to state a claim for conversion because "California courts do not recognize a claim for conversion arising from a contractual right of payment."  Mot. at 6.  Specifically, CSEA argues that Bogart's alleged contractual right to the payment of commissions did not entitle him to "the immediate possession necessary to establish a cause of action for the tort of conversion."  Mot. at 6 (citing In re Bailey, 197 F.3d 997, 1000 (9th Cir.1999)).  Bogart responds that his conversion claim does not rely on a "contractual right to payment," but rather alleges an ownership interest in a "specific, identifiable, and traceable" sum of money.  Opp. at 3-4.

Under California law, the elements of a conversion claim are as follows: "(1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." Mindys Cosmetics, Inc. v. Dakar, 611 F.3d 590, 601 (9th Cir. 2010). With respect to the first element of conversion, a plaintiff "must show that she was entitled to immediate possession at the time of conversion." In re Bailey, 197 F.3d 997, 1000 (9th Cir. 1999). Importantly, the Ninth Circuit has noted that, under California law, "a mere contractual right of payment, without more, does not entitle the obligee to the immediate possession necessary to establish a cause of action for the tort of conversion." Id. (citing Imperial Val. Co. v. Globe Grain & Milling Co., 187 Cal. 352 (1921).

The sole "wrongful act" alleged by Bogart is CSEA's March 27, 2014 letter to Purchasing Power, which resulted in Purchasing Power's "refus[al] to pay Mr. Bogart commissions on sales beginning in April 2014[.]" FACC ¶¶ 8, 13. This allegation fails to establish that Bogart was "entitled to immediate possession [of the commission payments] *at the time of conversion*." Bailey, 197 F.3d at 1000 (emphasis added). Notably, Bogart does not allege that he was deprived of his commission payments for any months up to, and including, March 2014. Rather, Bogart alleges that he failed to receive commissions "each month, from April 2014 to November 2014." FACC ¶ 17. At the time of the alleged conversion – March 27, 2014 – Bogart claims he was contractually entitled to continue receiving future commission payments from Purchasing Power. As noted above, however, "a mere contractual right of payment, without more, does

4

not entitle the obligee to the immediate possession necessary" to state a claim for conversion. Id. (citing Imperial Val. Co. v. Globe Grain & Milling Co., 187 Cal. 352 (1921); see also Gerawan Farming, Inc. v. Rehrig Pac. Co., 2012 WL 691758, at *6 (E.D. Cal. Mar. 2, 2012) (dismissing claim for conversion because "there is nothing to suggest that the royalty payments due to [plaintiff] amounted to anything more than a contractual right to payment"). Bogart has not sufficiently alleged the first element of his conversion claim. This failure is fatal to his claim.

To the extent that Bogart contends that the unpaid commissions are "specific, identifiable, and traceable" funds, this argument is misplaced. Opp. at 3. As Bogart accurately notes, "[m]oney can be the subject of an action for conversion if a specific sum capable of identification is involved." Farmers Ins. Exch. v. Zerin, 53 Cal.App.4th 445, 452 (1997). However, this rule supplements – but does not replace – the three essential elements of a conversion claim listed above. Mindys Cosmetics, 611 F.3d at 601 (9th Cir. 2010). In other words, the "specific, identifiable sum" requirement is necessary, but not sufficient, to state a claim for conversion. As discussed above, Bogart has failed to allege that he was entitled to immediate possession of the funds at the time of CSEA's alleged conversion. Therefore, it matters not whether the sum sought by Bogart is specific and identifiable.

Similarly, Bogart's reliance on Mathews is unavailing. Opp. at 3 (citing Mathews v. Orion Healthcorp Inc, 2014 WL 4245986 (N.D. Cal. Aug. 27, 2014). In Mathews, the name-plaintiff sued his employer for conversion, alleging that the employer had improperly withheld his commission payments. Mathews, 2014 WL 4245986, at *1.

1  Under Mathews' employment contract, he was entitled to receive
2  commissions on a monthly basis.  Id. at *1-2.  He received those
3  commissions up to, and including, June 2013.  Id. at *3.  However,
4  on July 12, 2013, his employer sent out an email notifying
5  employees that the commission payments would be delayed
6  indefinitely.  Id. at *3.  The district court granted Mathews'
7  motion for summary judgment with regard to his July 2013
8  commissions, which "had already been accrued in June."  Id. at *7.
9  However, the district court did not find in favor of the plaintiff
10 with regard to the August 2013 commissions, or any commissions
11 thereafter: i.e. those commissions which had not yet accrued at the
12 time of the employer's July 12, 2013 email.  Id. at *7-8.  The
13 district court's findings in Mathews support this Court's
14 conclusion that Bogart has failed to allege a conversion claim
15 against CSEA.  Unlike the July 2013 commissions in Mathews, Bogart
16 is unable to show that he was entitled to immediate possession of
17 the April 2014 commissions at the time of CSEA's March 27, 2014
18 letter.  Rather, Bogart's future commissions are analogous to the
19 August 2013 commissions in Mathews, which accrued after the
20 Mathews' employer's July 12, 2013 email.
21      For all of these reasons, CSEA's motion to dismiss Bogart's
22 second cause of action for conversion is granted.  Since Bogart has
23 not proposed any additional allegations that would be both
24 consistent with the FACC and sufficient to state a claim for
25 conversion this claim is dismissed with prejudice.  See Eminence
26 Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir.
27 2003) (holding that dismissal without leave to amend is appropriate
28 "where it is "clear . . . that the complaint could not be saved by

1 amendment").

### B.  Violation of the UCL

CSEA argues that Bogart's UCL claim should be dismissed in part, to the extent that it alleges fraudulent business practices, unfair business practices, or unlawful business practices through conversion.  Mot. at 8.  Bogart does not directly address CSEA's argument with regard to his claim of fraudulent or unfair business practices, but argues generally that CSEA's motion to dismiss the third cause of action in part is improper, and that the proper vehicle for such a challenge is a Rule 12(f) motion to strike. Opp. at 5.  Bogart also argues that his claim for unlawful business practices survives as it is derivative of his conversion claim. Opp. at 5.

As an initial matter, CSEA's motion to dismiss Bogart's UCL claim in part is properly before the Court.  A party may move to dismiss specific "prongs" of a UCL claim, without moving to dismiss the claim in its entirety.  See, e.g., Goldsmith v. Allergan, Inc., 2011 WL 2909313, at *7-8 (C.D. Cal. May 25, 2011) (ruling on a motion to dismiss individual "prongs" of the plaintiff's UCL claim, such as the "unlawful-prong UCL claim" and the "unfair-prong UCL claim").  Bogart's reliance on Thompson v. Paul, 657 F. Supp. 2d 1113, 1130 (D. Ariz. 2019) is unpersuasive.  CSEA is not asking the Court to strike individual allegations within the UCL claim, but rather to dismiss the claim in part, to the extent that it relies on specific theories.  Opp. at 5.  Such a request is procedurally proper.

CSEA first argues that Bogart's UCL claim should be dismissed, to the extent that it alleges "fraudulent" business practices by

7

1  CSEA.  Mot. at 8.  Bogart does not appear to oppose this argument.
2  To state a claim for "fraudulent" business practices under the UCL,
3  a plaintiff must "allege that consumers are likely to be deceived
4  by the defendant's conduct."  Jackson v. Ocwen Loan Servicing, LLC,
5  2011 WL 587587, at *4 (E.D. Cal. Feb. 9, 2011).  Bogart has failed
6  to allege that CSEA's conduct would have been likely to deceive
7  "consumers."  For this reason, the "fraudulent-prong" of Bogart's
8  UCL claim is dismissed with leave to amend.
9       CSEA next argues that Bogart's UCL claim should be dismissed,
10 to the extent that it alleges "unfair" business practices by CSEA.
11 Mot. at 8.  Bogart also does not appear to oppose this argument.  A
12 business practice is "unfair" under the UCL "if either (1) it is
13 tethered to [a] specific constitutional, statutory, or regulatory
14 provision, or (2) its harm to consumers outweighs its utility."
15 MacDonald v. Ford Motor Co., 2014 WL 1340339, at *9 (N.D. Cal. Mar.
16 31, 2014).  Bogart's opposition does not include any argument that
17 his UCL claim is "tethered to [a] specific constitutional,
18 statutory, or regulatory provision," nor has he alleged any facts
19 that would allow the Court to conclude that CSEA's business
20 practices harmed consumers.  For this reason, the "unfair-prong" of
21 Bogart's UCL claim is dismissed with leave to amend.
22      Finally, CSEA argues that Bogart's UCL claim should be
23 dismissed, to the extent that the allegation of "unlawful" business
24 practices is based on a theory of conversion.  As discussed above,
25 Bogart has failed to state a claim for conversion.  Accordingly,
26 the "unlawful-prong" of Bogart's UCL claim is dismissed with
27 prejudice, to the extent that it is based on conversion.  See
28 supra, at 7 (discussing futility of amendment of Bogart's

conversion claim). However, as the "unlawful-prong" is also based on a theory of intentional interference with contractual relations – which has not been challenged by CSEA – the prong itself survives CSEA's motion to dismiss. See <u>CRST Van Expedited, Inc. v. Werner Enterprises, Inc.</u>, 479 F.3d 1099, 1107 (9th Cir. 2007) (holding that intentional interference with a contract constitutes an "unlawful" practice for purposes of the UCL).

## III. ORDER

For the reasons set forth above, the Court DISMISSES WITHOUT LEAVE TO AMEND Bogart's claim for conversion in its entirety. The Court DISMISSES WITH LEAVE TO AMEND the "fraudulent-prong" and "unfair-prong" of Bogart's UCL claim. Finally, the Court DISMISSES WITHOUT LEAVE TO AMEND the "unlawful-prong" of Bogart's UCL claim, to the extent it is based on conversion. Bogart's Second Amended Counter-Claim must be filed within twenty (20) days from the date of this Order. CSEA's responsive pleading is due within twenty (20) days thereafter. If Bogart elects not to file a Second Amended Counter-Claim, the matter will proceed consistent with this Order.

IT IS SO ORDERED.

Dated: February 2, 2015

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE